V. G. NAHRGANG CO., F/A ANTHONY PAGLIALUNGO, PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81-4-00410

Before BERNARD NEWMAN, *Judge.*

(Dated: October 26, 1983)

*Sonnenberg & Anderson, Esqs. (Paul S. Anderson* and *Steven P. Sonnenberg, Esqs.,* on the brief) for the plaintiff.
*J. Paul McGrath,* Assistant Attorney General, *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Jerry P. Wiskin, Esq.,* on the brief for the defendant.)

BERNARD NEWMAN, *Judge:* Plaintiff has moved pursuant to Rule 59 of the Rules of the Court of International Trade for a rehearing and amendment of the decision and judgment dated August 8, 1983 in this action. 6 CIT 85 (1983). There, this Court overruled plaintiff's claim that certain waterproofing material invoiced as "Paralon NT4" and "Paralon 77" was dutiable under item 771.42 of the Tariff Schedules of the United States (TSUS) and sustained the classification of the merchandise by Customs under item 355.25, TSUS.

The predicates for plaintiff's motion are that "the interpretation given to Headnote 2, Schedule 4, Part 4, Subpart A, by the Court relative to the definition of 'synthetic plastics materials' was in error as a matter of law", and that "a case has come to the attention of plaintiff in the interim and which was recently decided, which case could serve as controlling precedent for the issues involved in the subject action." (Plaintiff's motion, 1.) Plaintiff urges

---

[4] This court's reference to the substantial transformation test, relied upon by the Government in *Cardinal Glove Co.,* emphasized that the change in the identity of the subject merchandise therein was of such a nature that it would meet the requirements of the substantial transformation test used in connection with the marking statute.

the Court to grant a rehearing and hold that the subject merchandise is classifiable under item 771.42, TSUS or alternatively, find that the merchandise is properly classifiable under 359.60, TSUS—a claim asserted for the first time in this case. For the reasons that follow, plaintiff's motion is denied in all respects.[1]

Fundamentally, of course, a motion for rehearing is addressed to the sound discretion of the Court. *Commonwealth Oil Refining Co.* v. *United States,* 60 CCPA 162, 166, C.A.D. 1105, 480 F.2d 1352 (1973); *United States* v. *Shell Oil Co., Inc.,* 44 CCPA 54, C.A.D. 637 (1957); and *Thornley & Pitt* v. *United States,* 19 CCPA 221, T.D. 45325 (1931). The appropriate circumstances for granting a rehearing were succinctly articulated by Judge Watson in *W. J. Byrnes & Co.* v. *United States,* 68 Cust. Ct. 358, C.R.D. 72–5 (1972) as follows:

> A rehearing may be proper when there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case. In short, a rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding. [Footnote omitted.] 68 Cust. Ct. at 358.

In support of the instant motion, plaintiff has failed to establish any appropriate basis for granting a rehearing.

Plaintiff's first argument in support of its motion is that this Court erred in its interpretation of the definition of synthetic plastics materials in Headnote 2, Schedule 4, Part 4A, TSUS, and therefore incorrectly concluded that the mastic portion of the Paralon products did not constitute plastics within the meaning of Headnote 2 and the superior heading to item 771.42, TSUS. Specifically, contends plaintiff, the definition in Headnote 2 does not require that the mastic be formed by condensation, polymerization or copolymerization in order to be regarded as a synthetic plastics material. Additionally, plaintiff asserts it was unnecessary to show that the mastic is derived from polypropylene to come within Headnote 2.

Concerning the first sentence of the definition in Headnote 2, Schedule 4, Part 4A, TSUS covering the three permissible processes enumerated above for forming synthetic plastics materials, plaintiff insists that the term *embraces* "connotes a general range of products to be included, but in no way limits the definition to such products along." (Plaintiff's Memorandum, 5.) I disagree.

Aside from plaintiff's failure to cite any precedent or legislative history to support its open-ended construction of the TSUS term "embraces", as employed in the first sentence of the definition in

---

[1] The plaintiff's request for oral argument has been noted, but in view of the conclusions reached herein and in the interest of judicial economy, oral argument is unwarranted. Accordingly, I am constrained to deny plaintiff's request for oral argument.

Headnote 2, plaintiff's understanding of this portion of the definition is simply not supported by its context.

It is this Court's view that the term "embraces" in the context of the first sentence of Headnote 2 was intended to encompass the entire range of products which are to be considered as synthetic plastics materials for purposes of the tariff schedules. Had Congress intended the term "embraces" to mean "includes, but not limited to", as inferred by plaintiff's argument, the drafters of the tariff schedules could simply have used the latter quoted phrase as in fact was done in the third sentence of this very same headnote, as well as in many other places in the TSUS. *See e.g.* Headnote 2(d), Schedule 2, Part 4. It may be observed that in addition to the term "embraces", the drafters of the tariff schedules utilized several introductory definitional terms in the TSUS, *e.g.:* "includes" (Schedule 1, Part 4, Subpart A, Headnote 1); "means" (Schedule 1, Part 8, Subpart C, Headnotes 1 (a) and (b)); "covers" (Schedule 4, Part 5A, Headnote 1); and "refers to" (Schedule 4, Part 9A, Headnote 2(b)). Absent any expansive language to the effect that the scope of the TSUS definition includes, *but is not limited to,* certain products or stated specification, we must take the stated criteria or requirements of the definition as applicable to the full range of products covered by the definition.

We reach plaintiff's contention regarding the third sentence of Headnote 2, Schedule 4, Part 4A. Under that portion of the definition, arguably had plaintiff established that the mastic is polypropylene, then plaintiff would have met its burden of proof under Headnote 2. However, it was clearly shown at the trial that the mastic portion of the Paralon products is composed of a combination of bitumen and polypropylene, with the bitumen constituting some 70 per cent by weight of the mastic.

In sum, plaintiff has failed to show either that the mastic was formed by condensation, polymerization or copolymerization, as specified by the first sentence of the definition, or that the mastic is "polypropylene", which is an enumerated plastics material in the third sentence of the definition.[2] Consequently, I adhere to my previous conclusion that plaintiff has failed to establish that the mastic portion of the Paralon products is a plastics material within the purview of Headnote 2 and the superior heading to item 771.42.

In any event, what plaintiff's arguments amount to is, simply, dissatisfaction with this Court's interpretation of the statutory definition in issue. Relative to this aspect of plaintiff's motion, there has been no showing of any of the factors discussed in *W.J. Byrnes, supra,* which would satisfy the requisites for a rehearing.

---

[2] The use of the language in Headnote 2 of *"these* products" (emphasis added) in the second sentence and *"such* products" (emphasis added) in the third sentence is indicative that the enumerated products in the third sentence (and any other non-enumerated products) must meet the requirements of the first two sentences. Otherwise, the terms "these" and "such" are superfluous in the second and third sentences. Also, note the use of the word "these" in the last sentence of the headnote.

Plaintiff's remaining contention, that the recent decision in *Semperit of America, Inc.* v. *United States,* Court No. 79-6-01021, Abs. Protest Dec. No. P83-201, 17:30 Cust. Bull. 27 (July 5, 1983), is a controlling precedent in this case, is likewise without merit.

*Semperit* was submitted to the Court for judgment on an agreed statement of facts, and as such, was decided without trial, briefing, or opinion of the Court. Moreover, the *Semperit* matter involved the classification of merchandise different from that involved in the present case, and the TSUS provisions which are in issue in the present action—*viz,* items 355.25 and 771.42, TSUS—were not involved in the *Semperit* decision. Plainly then, a motion for rehearing need not be granted on the basis of a new claim where there is no assertion or indication of newly discovered evidence or other appropriate ground.[3]

Concluding, plaintiff has failed to demonstrate any of the requisites for the granting of a rehearing, and accordingly, the original decision must be adhered to.

Plaintiff's motion under Rule 59 is denied in all respects.

\*        \*        \*        \*        \*        \*        \*

---

[3] While plaintiff has requested that it be permitted to submit additional evidence on the issue of whether the mastic constitutes a plastics material, plaintiff has not disclosed specifically what the new evidence would show, nor has plaintiff stated that the evidence proposed to be submitted was not previously available.