St. Regis Paper Co., plaintiff *v.* United States, defendant

Court No. 83–06–00848

On Plaintiff's Motion for Rehearing

(Dated December 11, 1989)

*Herrick & Larsen (Herbert Peter Larsen* on the motion), for plaintiff.
*Stuart M. Gerson,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Barbara M. Epstein* on the motion), for defendant.

Re, *Chief Judge:* Plaintiff, pursuant to Rule 59(a) of the rules of this court, has moved for a rehearing of this court's order of June 21, 1989, granting defendant's motion to sever and dismiss seventeen of the nineteen entries originally in this case. The entries consist of certain photographic paper imported at the Port of Dayton, Ohio, and liquidated at various times between 1979 and 1982.

The imported paper was classified by the Customs Service as paper, "not specially provided for," under item 252.90, TSUS. Plaintiff protested the classification and contended that the imported paper should be classified as "[b]asic paper to be sensitized for use in photography," under item 252.05, TSUS. The protest was denied, and

---

[2]In this connection, the Court does not need to resolve whether the instant case is analogous to *Canadian Meat Council* v. *United States,* 12 CIT 108, 680 F. Supp. 390 (1988), or to *Internor Trade, Inc.* v. *United States,* 10 CIT 826, 651 F. Supp. 1456 (1986), because these cases are potentially relevant only if the revocation determination of Commerce has no effect on the injury determination of the ITC.

plaintiff filed a complaint commencing the action. In lieu of answering plaintiff's complaint, defendant moved to sever and dismiss seventeen of the nineteen entries, contending that "seventeen * * * entries, covered by two * * * protests, are not properly the subject of this Court's jurisdiction due to plaintiff's failure to timely file a protest within 90 days of notice of the liquidation of those entries." Upon consideration of defendant's motion and plaintiff's motion to strike, which was submitted in response to defendant's motion, this court granted defendant's motion to sever and dismiss.

By the present motion, plaintiff seeks to have the court rehear defendant's motion to sever and dismiss. Plaintiff contends that "defendant's motion to dismiss * * * was granted without defendant having answered [the complaint], or plaintiff having the opportunity to be heard regarding the jurisdictional issue which is the core of the complaint." Plaintiff asserts that the Customs Service, in violation of Customs Regulation 159.9(b), did not post "notice of liquidation * * * in a conspicuous place in the customhouse at the port of entry * * *." 19 C.F.R. § 159.9(b) (1988).

After a thorough consideration of plaintiff's motion the court holds that plaintiff has not satisfied the requirements for the granting of a rehearing. Since plaintiff has failed to demonstrate any grounds that would justify the granting of its motion, plaintiff's motion for rehearing is denied.

It is clear "that the decision to grant or deny a motion for a rehearing lies within the sound discretion of the court." *Channel Master, Div. of Avnet, Inc.* v. *United States*, 11 CIT 876, 877, 674 F. Supp. 872, 873 (1987), *aff'd*, 856 F.2d 177 (Fed. Cir. 1988). *See also ILWU Local 142* v. *Donovan*, 10 CIT 161, 162 (1986); *Oak Laminates* v. *United States*, 8 CIT 300, 302, 601 F. Supp. 1031, 1033 (1984), *aff'd*, 783 F.2d 195 (Fed. Cir. 1986). In addition, Rule 59(a)(2) of the rules of this court provides that a rehearing may be granted "for any of the reasons for which rehearings have heretofore been granted in suits in equity in the courts of the United States." USCIT R. 59(a)(2).

In *W. J. Byrnes & Co.* v. *United States*, 68 Cust. Ct. 358, C.R.D. 72–5 (1972), the Customs Court set forth the appropriate grounds for the granting of a rehearing of a trial:

> A rehearing may be proper when there has been some error or irregularity in the trial, a serious evidentiary flaw, a discovery of important new evidence which was not available, even to the diligent party, at the time of trial, or an occurrence at trial in the nature of an accident or unpredictable surprise or unavoidable mistake which severely impaired a party's ability to adequately present its case. In short, a rehearing is a method of rectifying a significant flaw in the conduct of the original proceeding.

*Id.* at 358. Similarly, in deciding on a motion to rehear an order, the court must consider whether the movant is entitled to a rehearing under the principles of equity law. *See* USCIT. R. 59(a)(2).

In the present case, in lieu of an answer to plaintiff's complaint, defendant responded with its motion to sever and dismiss seventeen of the nineteen entries, alleging lack of subject matter jurisdiction. *See* USCIT R. 12(b)(1). Plaintiff responded with a motion to strike defendant's motion, and to compel defendant to answer the complaint. In its motion, plaintiff asserted "that the request by defendant for a partial disposition of this case prior to its service of Answer is premature and improper under the Rules of this Court." It is clear, however, that under Rule 12(b)(1) of the rules of this court, a party may make a motion for lack of subject matter jurisdiction even before answering the complaint. *See* USCIT R. 12(b)(1). Plaintiff's motion to strike was denied by order dated May 31, 1989, and defendant's motion to sever and dismiss was granted by order dated June 21, 1989.

In its present motion, plaintiff states that it "has now prepared an opposition to defendant's motion setting forth its position on the questions of fact and law involved." Plaintiff has neither asserted nor shown, however, that it could not have presented the same argument in response to defendant's motion to sever and dismiss. The events alleged by plaintiff, in the papers accompanying its motion, pertained to the condition of the Customs area at the Port of Dayton from 1979 to 1982. Indeed, in its complaint, plaintiff alleged that "[a]t the Port of Dayton, Ohio, during all relevant times, bulletin notices of liquidation were unable to be found in a conspicuous place in the Customhouse as prescribed by law."

Moreover, the allegations raised by plaintiff are without merit. According to statute, protests of classification decisions by Customs "shall be filed with [the appropriate] customs officer within ninety days after but not before * * * notice of liquidation or reliquidation * * *." 19 U.S.C. § 1514(c)(2) (1988). Section 159.9(b) of the Customs Regulations requires that:

> [t]he bulletin notice of liquidation shall be posted for the information of importers in a conspicuous place in the customhouse at the port of entry (or Customs station, when the entries listed were filed at a Customs station outside the limits of a port of entry), or shall be lodged at some other suitable place in the customhouse in such a manner that it can readily be located and consulted by all interested persons, who shall be directed to that place by a notice maintained in a conspicuous place in the customhouse stating where notices of liquidation of entries are to be found.

19 C.F.R. § 159.9(b) (1988).

In *Goldhofer Fahrzeugwerk GmbH & Co.* v. *United States,* 885 F.2d 858 (Fed. Cir. 1989), the Court of Appeals for the Federal Circuit affirmed a decision of this court, *Goldhofer Fahrzeugwerk*

*GmbH & Co.* v. *United States,* 13 CIT 54, 706 F. Supp. 892 (1989), which upheld the constitutionality of Customs Regulations 159.9. The appellate court held that, under the facts of *Goldhofer,* the "posting of bulletin notice of liquidation in the customhouse at the port of entry alone was as certain to ensure actual notice of liquidation to the importer of record or its local Customs broker as mail notice and, therefore, mail notice was not constitutionally required." 885 F.2d at 863.

In the present case, it is not disputed that, for the seventeen entries at issue in this motion, plaintiff's protest was filed after the 90-day period established by statute. Plaintiff asserts, nevertheless, that "[t]he form and manner in which the Port of Dayton posted bulletin notices of entry during all relevant times was not in compliance with [Customs Regulation 159.9(b)] * * *." Hence, plaintiff contends that "[a]s the Customs Service stands in violation of its own regulation regarding notice, no legal liquidation of these entries occurred on the dates purported by defendant and plaintiff is not barred from seeking the return of overpaid * * * duties * * *."

In *Frederick Wholesale Corp.* v. *United States,* 6 CIT 306, 585 F. Supp. 640 (1983), *aff'd* 754 F.2d 349 (Fed. Cir. 1985), the defendant moved to dismiss plaintiff's protest of the classification of certain imported merchandise, contending that the "court lacks jurisdiction because no timely protest was filed * * *." 6 CIT at 307, 585 F. Supp. at 641. The Court of International Trade held that the bulletin notices were "posted * * * in a conspicuous place in the customhouse," for the purposes of Customs Regulation 159.9(b). *See* 6 CIT at 310, 585 F. Supp. at 648. On appeal to the Court of Appeals for the Federal Circuit, plaintiff alleged "that the lower court erroneously concluded that the bulletin notice of liquidation was posted in a 'conspicuous place.'" *Frederick Wholesale,* 754 F.2d at 351. According to the plaintiff, Customs' actions were in violation of Customs Regulation 159.9(b).

In *Frederick Wholesale,* the bulletin notices of liquidation were filed in binders located in a third floor room of an eight floor customhouse in New York. The binders "were open, visible, and accessible to one who was in that room. However, there was no sign anywhere in the Customhouse advising the public that the bulletin notices were maintained [there]." 754 F.2d at 350. Nevertheless, the Court of Appeals for the Federal Circuit held that the bulletin notices were "in a conspicuous place" for purposes of Customs Regulations 159.9(b). The court observed that:

> [a] prudent importer or other interested person exercising a reasonable amount of diligence would have been directed to the proper room by consulting the Customs Information Office located on the plaza level in conjunction with, if necessary, the offices of the Regional Commissioner of Customs or the Area Director of the New York Seaport Area, which are also located

in the Customhouse. We refuse to apply a wooden construction to the term "conspicuous" as urged by appellant.

*Id.* at 352.

The appellate court in *Frederick Wholesale* also held "that the second method of giving notice under 19 C.F.R. § 159.9(b) was satisfied[,]" since "[t]he bulletin notices could readily be located and consulted by all interested persons who, exercising ordinary prudence, would be directed to their location by a 'notice' maintained in a conspicuous place." *Id.* The court explained that "[t]he information office, in conjunction with, if necessary, officials at the Customhouse, would be that 'notice.' " *Id.*

In the present case, in support of its contentions, plaintiff submitted the affidavit of Mr. Kevin T. Hannon, a licensed customhouse broker who is familiar with the Customs office at the Port of Dayton. In his affidavit, Mr. Hannon described the Customs office and the location of the bulletin notices of liquidation. He stated that in the Customs area there is an unmarked glass door to a room which "contains some desks and file cabinets and appears to be a work station." Mr. Hannon stated that "[t]he bulletin notices of liquidation are kept on a clipboard which usually resides on top of some file cabinets at the rear of this office." He also noted that "[t]here is at least one other clipboard kept in approximately the same location, and there are usually other papers piled or strewn on the top of the same set of cabinets." According to Mr. Hannon, "there is no sign or other device which would enable a visitor to ascertain the location of the bulletin notices."

As the Court of Appeals for the Federal Circuit noted in *Frederick Wholesale*, when bulletin notices of liquidation are not plainly visible, "[a] prudent importer or other interested person exercising a reasonable amount of diligence would have been directed to the proper room by consulting the Customs [employees on duty in the customhouse] * * *." 754 F.2d at 352. Mr. Hannon's affidavit indicates that the bulletin notices of liquidation were not plainly visible to persons unfamiliar with the Customs area. Nonetheless, plaintiff neither alleges nor proves that Customs employees were not available to assist persons in locating the bulletin notices of liquidation. Hence, it is clear that plaintiff in this case has not acted with "a reasonable amount of diligence."

Moreover, attached to defendant's motion to dismiss and sever was a declaration of Mr. Michael E. Murphy, who was Port Director of Customs at the Port of Dayton from 1977 to 1986. Mr. Murphy stated that the room containing the bulletin notices of liquidation was Customs' "main office" at the Port of Dayton. He explained that "[a]ll Customs business except passenger and baggage processing was transacted in this main office, and the office was always open to the public during business hours." Mr. Murphy stated that "[i]t was my policy as port director that at least one of the five Cus-

toms employees was required to be on duty in [the main office] during business hours."

In view of the foregoing, it is the determination of the court that plaintiff has not satisfied the requirements for the granting of a rehearing. Accordingly, plaintiff's motion for rehearing is denied.